The next case on the calendar for argument is United States v. Van Huysen, No. 18-2228. May it please the Court, my name is Kristen Santillo on behalf of Defendant Appellant Michael Van Huysen. This case is materially indistinguishable from United States v. Vale in which this Court determined that there was insufficient evidence to establish that the defendant's conduct crossed the line between fantasy and criminal conduct. There are numerous hallmarks in this case that put it on all fours with United States v. Vale and the same result should follow, that Mr. Van Huysen's conviction should be vacated. First, like in Vale, the government asked the jury to make an irrational and arbitrary distinction between emails that the government deemed to be fantasy and emails that it deemed to establish criminal intent. I think there's one email that we highlighted in our briefs called the repairman scenario in which the government was challenged on the reality of that email because the defense introduced evidence that showed that it wasn't a realistic scenario. Well, that's only because I think the sister lives in a building that had a superintendent that would fix things. How would anyone know that? I don't know whether there's a superintendent in the apartment house of anybody I know. I guess the point of the argument is that in response to that, the government told the jury, you know what, that wasn't a realistic scenario. That was actually, that email amongst several similar emails was actually just a sexual fantasy. It wasn't reality. We asked you to consider other emails to be establishing planning and criminal intent, but that one was just sexual fantasy. So even if the government had made that argument, that might be one thing, but what the government did was leave the jury with no principled basis to establish what was the distinction between these emails that it otherwise acknowledged some were fantasy. So Judge Gardefee was the district court judge in both cases. Yes, that's correct. And wrote very carefully and at length drawing the distinctions that he saw between the factual record created in both cases, which included such things as in Valley, numerous dates being set up between people who did not know each other, Valley and his correspondents didn't know each other. They didn't know their real identities. They never knew their actual names. They never, they didn't share information about their actual lives with each other. And in contrast here, the individuals knew Mr. Van Hise. They met in person. They knew each other's lives. They knew about each other's families. There were components of reality that suggested a, an element that, that I think Judge Gardefee found meant the jury was not just speculating or acting out of fear as they might have in Valley where there was a police officer involved. But there, that the jury was entitled to draw the inferences it drew. Do you think that Judge Gardefee was wrong in drawing those distinctions between the two cases? You called them materially indistinguishable. I call them materially indistinguishable, but I do think that he was wrong. And I do think that there, some of the even factors that you've identified in his analysis are intertwined with some of the conduct that his co-defendant Ash actually was involved in and not Mr. Van Hise. If you isolate Mr. Van Hise's conduct, there was one meeting that he actually met Mr. Ash in person. And I think that it's, it's the Trenton meeting in spring of 2011, right? Otherwise, he had no telephone conversations with Mr. Meltz. Everything was, he did know each other's actual identities though, correct? Yes. And I think that, that in some ways that the fact that Mr. Van Hise used his name and didn't conceal his name is actually negates the inference that he was trying to do, you know, actually commit a kidnapping because, and I think he actually is, the record is clear. That Mr. Van Hise was very unsophisticated and didn't take steps to conceal his identity. But I think that the content of the emails is, is identical in the fact that the Trenton meeting is the only in-person meeting that took place. It took place months by any account, months before any concrete discussion of what the government characterized as a concrete plan with respect to specific individuals. And during that meeting, there was nothing that was discussed that was specific about anybody in the Van Hise family, who the government later contended was, were the specific targets of the conspiracy. So I do think that, that, that is the only distinction between United States v. Valley and Van Hise. But I think that there was a lot of real world conduct in Valley that is actually even more substantial than that, that took place in, in Van Hise. There was evidence that Mr. Valley was engaged in internet searches, that he... What in particular would you point to, though, that made it unreasonable for the jury in this case to draw the inference that there was a real plan and this was not mere fantasy? Well, I would say there's two things. One, that the government basically asked the jury to disregard evidence about the repairman scenario as real and said that those e-mails were, were fantasy, but other e-mails that had the same elements, just as in Valley, were real and they were intended to establish planning. And then I would direct your court, the court to this e-mail at A579, it's actually a text exchange with Mr. Meltz and Mr. Ashe. And the government essentially said that, oh, because they discussed possibly a scenario in which Mr. wife was, Mr. Van Hise's wife was going to get into a car in Trenton near Eisenhower, that was somehow a real plan. And about this same meeting, Mr. Ashe and Mr. Meltz discussed it with each other and they said, have you heard from Mike? He still wants to do his wife. The response was, we have not been on the same time, my hours have changed. He wants to do his wife and his sister-in-law and who knows who else and still not be suspect. The response was, he is not in the real world. They continued to talk about that scenario. And then they planned at the bottom of the e-mail, they just completely changed the subject and started talking about another person. For the same day, they say, oh, there was this cross-dresser from New York City who told me he wants to come to me on Friday to get strangled. That's the same day that's supposed to be this plot in Trenton that these parties are all going to go and meet to kidnap and strangle Mr. Van Hise's family. There was never a specific plan. There was never a specific date. Nothing ever happened in this case between any of these people to establish that there was an overt act in furtherance of going after members of Mr. Van Hise's family. All right. Thank you very much. We have three minutes of rebuttal, and we'll hear from the government. May it please the Court. My name is Courtney Heavey, and I'm an Assistant United States Attorney for the Southern District of New York, and I represent the United States in this appeal. As set forth in the government's brief, this Court should affirm the district court's decision. As Judge Gardefee's thorough and thoughtful post-trial opinion demonstrates, the evidence supporting Van Hise's conviction was abundant, both as to his agreement to kidnap water I'm not sure how you can say it's abundant when you really have to work to distinguish it from Vole, which was insufficient. I mean, I'm looking at these e-mails, and in terms of the fetish elements, they seem to be exactly the same. They're gloating over the same gruesome fantasies. I don't see how you can say it's overwhelming. I mean, the government's always saying everything's overwhelming, but this one's not. So could you tell me, what was the overt act here that anybody did? Well, Your Honor, there were several. First, there was the in-person meeting in New Jersey. When? Early 2012, and I know there was some dispute between Well, what did the indictment say? The indictment indicated that it was early 2011, but that is not determinative, as the Did you argue that in the trial, that it was early 2011? No, Your Honor. In the government's closing statement, they said that it occurred quote, sometime between the spring of 2011 and early 2012. They said, quote, we don't know the exact time of that meeting. In the government's post-trial brief, they said, quote, it is impossible to determine when exactly the meeting occurred. A review of the evidence confirms that it was likely approximately a year or longer before Ash first met the undercover in February 2013. So the evidence can't possibly establish beyond a reasonable doubt that it took place in early 2012? Well, Your Honor, as the district court held, a reasonable jury was able to find that it did happen in early 2012, and that's the standard that we're looking at here. There was specifically what the district court But you didn't argue it, and it's not in the indictment. Your Honor, the determinant factor here is what was put before the jury and what a reasonable jury could have found. And the evidence that was put before the jury was, in particular, Ash's recorded conversation with an undercover FBI in January 5, 2013, where he discussed that in-person meeting with Van Hise and said, quote, that it occurred about a year ago. And, Your Honor, that was sufficient evidence from which the jury could have found that that meeting occurred in early 2012. That's your – you said there were several. I mean, I'm not overwhelmed, but what are the others? Then you have, Your Honor, the fact that Van Hise repeatedly shared personal details about the victims. And as both the district court and this court found, that is one of the distinguishing factors between this case and Valley. In the course of the communications that involved Van Hise discussing kidnapping, raping, and torturing his family members, Van Hise shared – he shared their photographs, the street they were living on, their relationship to him, the ages of the children, the fact that his wife had mental health issues and had previously tried to commit suicide, and the fact that she was pregnant. All of that distinguishes this case from Valley. Again, you had the co-conspirators repeatedly expressing their agreement to engage in the planned activities. No, I understand. I was asking for overt acts. I mean, if they didn't express agreement, then you wouldn't have a conspiracy. So the question is, what are the overt acts? Yes, Your Honor. And if the Trenton meeting was in 2011 and not 2012, does that disqualify it from constituting an overt act? No, Your Honor. In either event, it would be within the time of the charged conspiracy. And this was the first step towards the ultimate plan. As this court has held, conspiracy does not require that the individuals have agreed upon the precise victim and all of the precise details. And so this meeting was that first step in where they did discuss murdering, kidnapping, and dumping a body. Could you address the vanishing plots issue? I understand that when Ash tells Van Hise that he and Meltzer are free on October 26th, Van Hise never responds. And there's no follow-up at all. In Valley, that happened as well. They made plans, and then the date came and went, and no one showed up or even mentioned that they had made a plan. Why isn't that also a signal that this was fantasy and that the jury overstepped? Well, Your Honor, this court actually addressed that issue with respect to Ash. And one of the key factors here is that, as you indicated, first, Van Hise never agreed. There was never an establishment on that date. And second, a key intervening factor that happened here was, of course, the arrest of Valley. And it was, again, a reasonable inference for the jury to draw was that that key factor then caused everyone to lay low. So this wasn't—whereas in Valley, it was repeated. He had—they would have entire plans. You know, the blueprint came of the specific date. It came and went, and these exact co-conspirators are still, you know, talking with no mention of that plan and that victim. What's the evidence that the Van Hise family was discussed at the Trenton meeting, whenever it took place? Your Honor, the record does not reflect that the Van Hise's family members were discussed in that meeting. However, that, again— Isn't that the conspiracy was to murder them? Yes, Your Honor. However, the entire conspiracy did not need to be drawn out in that—in one particular instance. So that meeting was the first step, and this is not— And then if the indictment is right, then nothing happened again until March of the following year, like 12 months, 14 months later. It doesn't sound like a really active course of conduct. I mean, and they didn't even discuss it. So over a year later, they're discussing something else. Well, a couple of things, Your Honor. I think the fact that the conversations that were introduced in trial in March 2012, I think they support—and how active those were starting in March 2012 until October. I think they further support that that meeting likely occurred in early 2012, that there wasn't a year gap. Well, there was a meeting that did not take place more than a year later at which nothing was—at which this was not discussed. It doesn't really—I don't know. It doesn't really get you there. Well, Your Honor, and this goes back to, I think, something you had previously said. The conversations that these parties had, once they started discussing Van Hise's family members, they did refer back to that meeting in the context of these conversations. And so the parties themselves considered this meeting relevant. And I would point you to— Relevant? Excuse me? Relevant? They considered it relevant? Yes. In what sense? That they referred—they had met each other, so they met each other. Well, they referred to it in the sense of, when are we going to meet up the next time? In March 1st, 2012, Van Hise asked Ash if he's going to try to help me do my sis-in-law. And her babies. Yes. Yes. Yeah. When do you think the next time we can meet up is? So they were talking—they were referencing that meeting in the context of ongoing discussions once they had decided that Van Hise's family members would be the targets. And again, I would—again, as Ash—excuse me, as this Court found in Ash, the nature of these communications frequently came back to a concern about getting caught. And as this Court found in Ash, it was precisely because it was a real conspiracy that they wanted to be realistic in their planning and avoid getting caught. And to the A579 that Appellant referenced, the concern that Melce and Ash had was a concern that Van Hise's plans could get them caught. It wasn't a concern that Van Hise didn't actually intend to this. To the contrary, it was the fact that all of these parties were serious about it, were serious about actually committing the crime. Except when they weren't. Except when the e-mails went out that were pure fantasy, as the government conceded. So sometimes they were deadly serious about murdering people and their little children, but then other times they were just fantasizing. The jury is supposed to decide which was a real intent to infanticide and which ones were just fantasy. Your Honor, I see that my time is up. May I— Go right ahead. Your Honor, a couple of things. First, the government in their summation was merely indicating that the jury did not need to find that every single e-mail was in furtherance of the conspiracy in order to find that there is a conspiracy. And that is a legitimate statement of the law. And as we've already pointed out, the repairman scenario is the only instance that they are pointing to to say that this was somehow impossible. And it is categorically different from Vallee, where he was, for example, claiming to use a human-sized oven, where he had a specific plan to murder, kidnap three different women in three different locations that were thousands of miles apart, including India and Pakistan. That's just simply not the case here. You can't take one — what the appellant is trying to do is take one repairman scenario, which is not facially impossible. And as Your Honor pointed out, there's no evidence that Van Hise didn't understand or know that — or excuse me, to the contrary, that he did know that there wasn't — that it was impossible. And he didn't have to be a criminal mastermind with the perfect plan to avoid being detected in order to be guilty of conspiracy. Thank you very much. Ms. Santillo, you have three minutes of rebuttal. I wanted to just address the government's point that they were concerned about Mr. Van Hise being too unrealistic and getting caught. I think it's critical to note that there has to be a bilateral conspiracy here. So to the extent that they're distancing themselves from Mr. Van Hise because he has not a realistic plan, then that's also relevant to, you know, disestablishing the conspiracy in this case. You know, they specifically said he's not in the real world about the October 26th meeting on October 23rd. And then within the context of that email, that plot vanished and suddenly a new plot emerged, which this cross-dresser from New York City was coming to meet him on Friday to get strangled. So the same element, vanishing plot, additional people. The government noted that, oh, in March 2012, suddenly there becomes specific talk about the Van Hise family. Well, in the March 2012 email exchange. Specific talk about the family, an exchange of photographs, addresses. Well, there was never. And the things you would need, and the things you would need in order to implement the plot. Well, there was never an address exchanged. And I think that. Eisenhower. Eisenhower. Well, they said. Drive or something. Meet. They said, we should meet. And I have it right here. Isn't that where the sister lived? I figured near her sister. She'll be the one to meet her. And when she goes to give you head. Sorry, pardon me. You grab her. It'll be in Trenton near Eisenhower. There's no address there. He responds, in a house or in the car? And Mr. Van Hise responds, the car. That's it. That doesn't have. And nobody said, hey, what's the address? So I can go there and find it. That's the distinction between Vale. In Vale, somebody asked what the address was. And he didn't provide the address. But nobody asked for that here. Because nobody was ever serious about finding these people. Right? There was no specific address given. And I think that that is, you know, an overstatement of the evidence. And I think it's significant in telling the government has to characterize it like that in order to bolster its case. When there's no basis for it in the record. How do you distinguish Ash? I think Ash is distinguishable in numerous ways. First of all, Mr. Van Hise was captured by the FBI came to his house before October 26th. He started immediately, extensively cooperating with the authorities. From that point on, even within the context of count one, there was additional conduct by Ash. He started doing Internet searches, including things like chloroform, looking for chloroform, how to kidnap a person. Those were facts that this court relied on in Ash to say that there was evidence of specific intent to follow through on a conspiracy. There was also the fact that Mr. Ash and Mr. Melt had a much more real world exchanges. They spoke repeatedly on the phone. They met in person. So with regard to Mr. Ash's real life encounters with several of these other people, his he had more like real world acts that took place than Mr. Van Hise, who was, you know, 99.99 percent of the case against Mr. Van Hise is about these emails. You know, and I think that the obviously that we have a severance argument here, too. There was overwhelming evidence against Mr. Ash that showed that his conduct escalated after his involvement with Mr. Van Hise. And so I would just really urge the court to separate out the conduct of Mr. Ash and to focus on the sufficiency of the evidence against Mr. Van Hise, because I think one thing the court was very careful to do in United States v. Valley was to try to draw a rational distinction between fantasy and reality. And I think that if the court finds that Mr. Van Hise's conduct was criminal and Mr. Valley's conduct was fantasy, that line is going to be irrational, undiscernible. But, you know, I think that there's a reason why, and obviously I didn't write the briefs in the other case, and I don't think that Ash's decision is binding, but I do think that there were more real world encounters in the Ash side of the case than there were in Mr. Van Hise's side. Thank you very much. We'll reserve decision.